William G. Garbina (Utah Bar No. 13960)
Sharadee Fleming (Utah Bar No. 9872)
Anneliese Booher (Utah Bar No. 9117)
Office of the Salt Lake County District Attorney
35 East 500 South
Salt Lake City, Utah 84111
Telephone: 385.468.7700
E-mail: wgarbina@saltlakecounty.gov
         sfleming@saltlakecounty.gov
         abooher@saltlakecounty.gov

*Attorneys for Defendants Salt Lake County, District Attorney Simarjit Gill, and Jeffrey Hall*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| TAMERA R. BILLS,<br><br>       Plaintiff,<br><br>vs.<br><br>SALT LAKE COUNTY, et al.,<br><br>       Defendants. | **DEFENDANTS' OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Case No. 2:25-cv-00351-HCN<br><br>District Judge Howard C. Nielson, Jr. |

---

### Table of Contents

STATEMENT OF FACTS ........................................................................................ 4

  **The Subpoena** .............................................................................................. 4

  **The DA's Process – Coordinated with the AOC** ......................................... 5

  **In Addition to Facilitating Witness Payments, the Approach Benefits the DA Office** ....... 7

  **After Receiving the Subpoena, Before the Preliminary Hearing** ................... 8

  **April 14, 2025** ............................................................................................. 8

ARGUMENT ....................................................................................................... 10

  I.   **THE COURT SHOULD DENY BILLS' MOTION FOR INJUNCTIVE RELIEF** 10

**II.    UNDER ABSTENTION DOCTRINES, THE COURT SHOULD DENY BILLS' MOTION FOR EMERGENCY RELIEF AND ALLOW THE STATE CRIMINAL PROSECUTION TO PROCEED UNFETTERED** ................................................... 11

**III.    BILLS HAS NOT SHOWN AN ENTITLEMENT TO INJUNCTIVE RELIEF** 17

**A.    Standards for Injunctive Relief** ................................................... 17

**1.    Bills Has Not Made a Strong Showing that She is Likely to Succeed on the Merits of her § 1983 Claims for Constitutional Breaches** ..................................... 18

**a.    Standards Governing Bills' § 1983 Claims** ................................. 18

**b.    Bills Has Not Made a Strong Showing the Subpoena Violates the Fourth Amendment or Substantive Due Process Protections under the Fourteenth Amendment,  Including under any "Clearly Established" Law** ........................ 19

**i.    Bills Has Not Made a Strong Showing the Subpoena Violates Rule 14 in Any Material Respect** ................................................................ 20

**ii.    Bills Fails to Make a Strong Showing the Subpoena is Void** .................... 25

**iii.    Bills has Not Made a Strong Showing that any Alleged Infirmities in the Subpoena Violate the Fourth Amendment under Clearly Established Law** ..... 27

**iv.    Bills Has Not Made a Strong Showing the Subpoenas Violate the Fourteenth Amendment's Substantive Due Process Protections, Including under any "Clearly Established" Law** ........................................................ 33

**2.    Bills Has Not Established She Will Suffer Irreparable Harm Without a TRO** 35

**a.    Bills Has Not Made a Strong Showing that the Balance of Harms is in Her Favor or that an Injunction Would Serve the Public Interest** ............................ 37

**CONCLUSION** ......................................................................... 38

Pursuant to Rule 65, Federal Rules of Civil Procedure, Salt Lake County (the County), District Attorney Simarjit Gill (Gill), and Chief Deputy District Attorney Jeffrey Hall (Hall) submit this Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF 12). Bills brings this putative class action to challenge via 42 U.S.C. § 1983 the validity and constitutionality of a subpoena (Subpoena) issued to her by the District Attorney (DA). The Subpoena sought her in-court testimony as a victim-witness in Utah's Third District court at a preliminary hearing on April 14, 2025, in *State of Utah v. Tyler Duane Bills*, case no. 251900610. That day, Bills moved the state court to quash that subpoena, asserting the same arguments she does before this Court—primarily that it improperly asked her to appear first at the DA Office (adjacent to the courthouse) for check-in before the hearing. She has fully briefed her motion to quash and awaits a June 23 hearing.

Given these facts and the argument set forth herein, Bills cannot establish an entitlement to the extraordinary injunctive relief she seeks, which would without legal basis or harm to her require the County to alter its subpoena system, interfering with numerous state cases. Her Motion should be denied.

First, principles of comity mandate that a federal court abstain from addressing an issue presently pending before a state court judge in a criminal proceeding. But second, the Motion can also be denied on the merits. Bills' repeated assertion that the Subpoena is a command to appear at the DA Office for an interrogation is inaccurate. It is a command to appear and testify at court hearing, using the DA Office as an assembly point to keep victims and witnesses safely separate from those accused of committing crimes. The DA's subpoena practice is coordinated with the Administrative Office of the Courts (AOC) and facilitates the payment of witness fees. Similarly, Bills' assertion that a subpoena cannot be issued without judicial approval (ECF 12 at

1) is simply wrong. Utah Rule of Criminal Procedure 14 expressly provides, "An attorney admitted to practice in the court in which the action is pending may also issue and sign a subpoena as an officer of the court." The subpoena practice of the DA Office is neither extra judicial, *ultra vires*, nor unconstitutional. Bills fails to establish otherwise.

## STATEMENT OF FACTS

1.  Bills is the victim-witness of a crime the DA charged in an information filed in *State v. Tyler Duane Bills*, Utah Case No. 251900610, for a violation of a domestic violence protective order—a third-degree felony under Utah Code § 76-5-108. The case is pending in Utah's Third Judicial District Court before the Hon. Vernice Trease. *See* State Court Docket, Case No. 251900610 (Ex. 1).

2.  On March 12, 2025, the DA sent Bills via regular US Mail, the Subpoena that is the subject of her claims. ECF 1-1 at 1.

## The Subpoena

3.  The Subpoena's first sentence states: "YOU ARE COMMANDED to appear and give testimony in the above-entitled action before the court as a witness in a criminal action against the above-named defendant(s)." ECF 1-1 at 1.

4.  The Subpoena commanded Bills to appear to testify at the preliminary hearing scheduled in *State v. Bills*, on April 14, 2025, at 1:30 p.m. It listed the address of DA (DA Office) and asked her to "please arrive no later than 1:00 PM." ECF 1-1 at 1.

5.  The Subpoena, like all those the DA Office issues, has a bar code assigning a unique identifier to the document. ECF 1-1 at 1; Decl. of Lisa Ashman (Ex 2), ¶¶ 5, 19.

6.  As a courtesy, witnesses are provided a one-day parking pass to allow them to park in the parking lot at the DA Office. The Subpoena also includes a page with information on multiple

parking options, including parking at the Matheson Courthouse. ECF 1-1, at 2; Decl. of Jeffrey Hall (Ex. 3), ¶ 14.

### The DA's Process – Coordinated with the AOC

7.   The DA Office is immediately west of the Matheson Courthouse. The courthouse and DA Office are separated by only landscaping and a sidewalk. *See* Google Maps Photo (Ex. 4). The courthouse west entrance, where subpoenaed witnesses enter after leaving the DA Office, is just northeast across the sidewalk. *Id*.

8.   The DA Office is a law enforcement facility permitted to establish secure areas pursuant to Utah Code Ann. § 76-8-311.1. Upon arrival, like all other non-employees, subpoenaed witnesses must pass through a magnetometer, empty their pockets, and put any bags on a conveyor belt for scanning. A Sheriff's Deputy ensures security measures are observed. The process is not different in kind or character from that citizens undergo when entering the Matheson Courthouse or the Orrin G. Hatch U.S. Courthouse. Ex. 3, ¶ 6.

9.   Once through security, witnesses are shown to a nearby counter with a window for check-in. They are asked to show their subpoena, and the bar code on it is scanned. Ex. 2, ¶ 12.

10. Then, witnesses are led to an adjacent room on the same (first) floor and asked to wait. The waiting room is large, with windows to 500 South along one long side, and a row of glass-walled conference rooms on the opposite side. Ex. 2, ¶ 12.

11. No one is told they may not leave, or held against their will. Ex. 3, ¶ 7.

12. Scanning the subpoena's bar code triggers: 1) a message sent to the prosecuting attorney on the pertinent case to notify them that the subpoenaed witness has arrived; and 2) an entry reflected in the case, which is later included in a "witness check in report." Ex. 2, ¶ 13.

13. The witness check in report was developed to provide the AOC with a list of persons who complied with the subpoena and are entitled to be paid witness fees. Ex. 2, ¶¶ 3, 6-11.

14. The AOC uses the report to identify persons entitled to be paid their witness fee checks (the "Check-in/Payment Process").  Ex. 2, ¶ 14.

15. The latest iteration of the Check-In/Payment Process resulted from coordinated work between the DA Office and the AOC, specifically between Lisa Ashman, Chief of Administrative Operations for the DA Office, and Mark Paradise, Trial Court Executive for the Third District Court for the AOC. Ex. 2, ¶ 3.

16. Since November 2024, the DA Office has used the Check-in/Payment Process to facilitate the issuance of witness fee checks to subpoenaed witnesses. Ex. 2, ¶¶ 7-8 & Ex. 2-1.

17. The DA Office sends the AOC weekly "witness check in reports" generated by bar code scanning. Ex. 2, ¶ 13.

18. The DA Office generated 19,988 witness subpoenas for court events scheduled for the period of January 1, 2024 to January 1, 2025. Ex. 2, ¶ 17.

19. The DA Office has generated 12,447 witness subpoenas for court events scheduled for the period of January 1, 2025 to January 1, 2026. There are court events scheduled through the end of this calendar year for which subpoenas have already been generated. Ex. 2, ¶ 18.

20. Subpoenas generated by the DA Office case management system assign a unique bar code identifier to each. To calculate the total subpoenas generated during the identified time frame, the system searched for the unique identifier and totaled them by month. Ex. 2, ¶ 19.

21. The failure to appear at the DA Office is not treated as a failure to comply with a subpoena. Even if witnesses fail to check-in at the DA Office, and go straight to court, the DA Office facilitates the witness fee payment. Typically, this is done once the hearing or trial ends by

asking the witness to walk across the sidewalk to the DA Office to have their subpoena scanned, as this is most efficient. Ex. 3, ¶ 15.

22. Compliance with the subpoena is not measured by checking in at the DA Office; witnesses must show up in court. They are not excused until the matter for which they have been subpoenaed ends or until their testimony is complete. This is typically accomplished following completion of testimony with a request to the Court that the witness be excused. Ex. 3, ¶ 16.

**In Addition to Facilitating Witness Payments, the Approach Benefits the DA Office**

23. The Matheson Courthouse does not have a witness assembly room. Ex. 3, ¶ 8.

24. It only has two small conference rooms outside each courtroom, available on a first-come, first-served basis. There are two somewhat larger rooms on each floor, but they are locked unless a bailiff opens them. Even so, they will not accommodate a very large group. Ex. 3, ¶ 9.

25. Third District Court Judges have assigned days for criminal dockets, when a variety of matters in many cases are set to be heard at the same time, in the same courtroom. Ex. 3, ¶ 10.

26. Because the Matheson Courthouse lacks a witness assembly room, and because preliminary hearing calendars, jury trial settings, and other evidentiary hearing dockets involve many victims and witnesses, the Check-in/Payment Process allows for a more orderly connection between prosecutors and witnesses. Ex. 3, ¶ 11.

27. Without the Check-in/Payment Process, days when victims and witnesses must appear in court would be even more chaotic. Prosecutors would be calling out names in the courtroom to find witnesses, and more frequently stepping into the hallway to see if witnesses had arrived, with judges left waiting with a full courtroom and a long docket. Ex. 3, ¶ 12.

28. Additionally, the Check-in/Payment Process offers a safe location for witnesses and victims to wait that does not put them near defendants or the family and friends of defendants, as

mandated by the Utah Victim Bill of Rights. Utah Code § 77-37-3. Ex. 3, ¶ 13.

### After Receiving the Subpoena, Before the Preliminary Hearing

*29.* After receiving the Subpoena, but "days prior to the hearing," Bills consulted her lawyer who told her she "should appear at the DA's Office." ECF 12-1 at 3. Bills and her lawyer "agreed that [she] would appear at the DA's Office by command of the Subpoena, and then enter the courthouse, but not enter the appointed courtroom." *Id.*

### April 14, 2025

30. On April 14, 2025, Bills followed through on the advice of her counsel. She checked in at the DA Office (ECF 12-1, at 4) and later went to the courthouse. *Id.* at 5.

31. While waiting at the DA Office, Bills was not interrogated. ECF 12-1 at 5.

32. Bills never states or suggests that she tried to leave the DA's Office and was stopped; asked to leave and was told she couldn't; was held against her will; or was coerced—or even asked to, meet or speak with anyone, including a prosecutor, to answer questions. ECF 12-1.

33. After DA staff announced that those in the waiting room should proceed to the courthouse, Bills entered the courthouse by a staff entrance because she is a court employee. ECF 12-1 at 5. The other witnesses entered through the west entrance and (unlike Bills) were security-screened.

34. Bills' attorney went to Judge Trease's courtroom. When her case was called, he orally moved to quash the subpoena. Ex. 1, at 7. He also read a statement from his client:

> *As to the substance of today's proceedings, Ms. Bills has authorized me to share her thoughts and wishes with the Court. First, she asks the State to not pursue the OSC today and to not pursue the latest protective order violation charges filed against Mr. Bills. Second, given that the OSC and the new charges revolve around alleged messages from Mr. Bills to Ms. Bills she would invoke the marital communications privilege if pressed. Finally, all she asks is that the Court keep Mr. Bills on probation for the duration and that he respect her wishes to be left alone. Ms. Bills appreciates that Mr. Bills is suffering through a terminal illness, and she does not wish him any more misery. She wishes him peace.*

Recording of Motion to Quash (Ex. 5).[1]

    35. Bills' lawyer moved to quash the subpoena on the following grounds:

> *Your Honor, I, I would like to address it. I think the plain language of Rule 14 makes it an invalid subpoena. My client was subpoenaed to the DA's office, not to court today. I don't think the court has jurisdiction over my client.*

<p style="text-align:center">* * *</p>

> *Your Honor, the subpoena, compels the person to appear at the District Attorney's office under threat of contempt at 1:00 PM when the hearing before the court is at 1:30 PM.*

<p style="text-align:center">* * *</p>

> *Your Honor, Utah law confirms that Rule 14 of the Utah Rules criminal procedure authorized subpoenas for three and only three purposes, attendance before a court attendance, before a magistrate attendance before a grand jury. In this case, the subpoena orders attendance at the, the District Attorney's office... And I just got report from my client that they, a group of subpoenaed people went over there and sat for a half hour and then were told to head over to the court.*

<p style="text-align:center">* * *</p>

> *I think that's a detention of the Fourth Amendment, ultra vires, authority, that is authority that the state of Utah does not have. We actually litigated this in front of Judge Corum some years ago, and I have a, I have a declaration from now deceased, attorney Stewart Gollan, that states after that finding that the subpoena did not comply with Rule 14. He ran into the chief Deputy District Attorney Jeff Hall, expressed the concerns over the subpoenas, commanding attendance at the DA's office, and Jeff Hall indicated he would run it up the flag. Lo and behold, the practice persists, and I think it is unlawful under the rule and unconstitutional given the, the threat of contempt or jail should they not appear at a place that they're not required to appear.*

Ex. 5.

    36. The prosecution was given the opportunity to file a response, and Bills' counsel was allowed to file a reply. Ex 1, at 7. The reply was filed on May 14, 2025. State Court Docket, Case No. 221906395 (Ex. 6) at 15.[2] A hearing was set for June 2, 2025, but upon a motion from Bills, was rescheduled to June 23, 2025. Ex. 1, at 7.

---

[1] Due to the expedited response deadline for Bills' Motion, a certified transcript is unavailable. This transcription, believed to be accurate, is submitted to aide the Court and supplement the recording (Ex. 5).
[2] This is a docket from another prosecution against Tyler Bills. It is included here because Bills erroneously filed her Reply in that matter.

37. Bills' Motion to Quash the Subpoena commanding her appearance at a preliminary hearing to determine whether the matter will be bound for trial of a third-degree felony for violation of a domestic violence protective order remains pending in *State v. Bills*. Ex. 1, at 7.

## ARGUMENT

## I.    THE COURT SHOULD DENY BILLS' MOTION FOR INJUNCTIVE RELIEF

Three weeks before Bills filed this action challenging the subpoena practices of the DA's Office, she filed a motion to quash in a state criminal proceeding asserting the same grounds. Two weeks after filing this action Bills submitted a reply memorandum on her motion to quash. Bills' Motion fails to engage with the notion that she has put two trains on the same track. But principles of federalism and comity operate to prevent the opportunity for a collision by having federal proceedings yield to the state's interest in criminal enforcement by having federal courts abstain from deciding an issue determinative of the state prosecution. Since the issue of the validity of the subpoena was earlier submitted to the state court, and is awaiting its decision, this Court should decline to visit the issue and deny Bills' request for injunctive relief.[3]

If the Court reaches the merits of Bills' Motion, it should decline to grant her injunctive relief. The extraordinary remedy she seeks is unavailable to her based on the evidence before the Court. Far from showing her right to relief is clear and unequivocal, Bills has failed to establish any of four required elements for injunctive relief—including a required strong showing of a likelihood of success on the merits of her constitutional claims and a balancing of harms.

---

[3] If the time for Defendants to respond to the Complaint arrives, Defendants will be moving for dismissal of this action on the *Younger* and *Colorado River* abstention doctrines, in addition to other grounds.

Bills is correct about a few things—the subpoenas the DA Office issues list the address of the DA Office (across the sidewalk from the courthouse), the DA Office does not typically file returns of service, and in <u>criminal</u> cases, the DA Office does not include the "Notices to Persons Served with Subpoenas" mandated by the Utah Rules of <u>Civil</u> Procedure for <u>civil</u> cases. However, Bills is wrong when she claims these practices rise to a constitutional violation. Indeed, aside from the return of service, they don't come close to breaching the Utah Rules of Criminal Rule.

To avoid this truth, Bills' Motion is rife with the suggestion the Subpoena she received sought to compel her testimony out of court—which could be a Rule violation. But it does not. On its face, in bold text, in the first sentence, the subpoena states: "YOU ARE COMMANDED to appear and give testimony in the above-entitled action before the court as a witness in a criminal action against the above-named defendant(s). ECF 1-1 at 1. Not only does Bills lack any evidence to support that assertion, her own experience demonstrates otherwise. She was not interrogated at the DA Office. She assembled with others. She was not released after coming to the DA Office. Instead, she was led to the courthouse – though she left the group (contradicting her claim that she was detained against her will). And she did all this on the advice of counsel.

For these reasons and those discussed below, the Court should deny Bills' Motion under notions of comity and Rule 65. If granted, the proposed injunction would disrupt numerous criminal prosecutions. In contrast, if the Court does not grant it, <u>nothing happens</u> – except Bills pursues her motion to quash in state court as set forth in the Utah Rules of Criminal Procedure.

## II.    UNDER ABSTENTION DOCTRINES, THE COURT SHOULD DENY BILLS' MOTION FOR EMERGENCY RELIEF AND ALLOW THE STATE CRIMINAL PROSECUTION TO PROCEED UNFETTERED

For the reasons explained below, under either the *Younger* or *Colorado River* abstention doctrines, the Court should find that ruling on the validity of Bills' Subpoena or the general subpoena practice of the DA's Office would breach notions of comity, and deny her requested emergency injunctive relief.

Before filing this action, Bills challenged the validity of the Subpoena in the state court criminal proceeding. ECF 12 at 8. On April 14, 2025, three weeks before this case was filed on May 5, Bills, through counsel, orally moved to quash the Subpoena commanding her to appear and testify at a preliminary hearing. (Ex. 1, at 7, Ex. 5.)  Her counsel argued the same grounds for quashing as he here asserts in support of his § 1983 claims.

The issue of the check-in at the DA Office, the gravamen of <u>both</u> Bills' Complaint here and her Motion for TRO, was raised in the state court criminal proceeding. (Ex. 1, 5.) Since this case was filed, Bills has been simultaneously proceeding in state court, having submitted a reply memorandum on May 14. (Ex. 6, at 15.) The federal and state criminal proceedings are parallel. *See New Beckley Mining Corp.,* 946 F.2d at 1073 (holding "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums.").

The parallel proceedings and overlapping, even identical, issues raise readily identifiable legal issues of federalism and comity. Supreme Court-created judicial doctrines to seek to address the obvious practical complications resulting from simultaneous proceedings in state and federal court, two of which apply here: *Younger* and *Colorado River* abstention. *Younger v. Harris*, 401 U.S. 37 (1971); *Colorado River Water Conserv. Dist.* v. *U.S.*, 424 U.S. 800 (1976). They should guide this Court to deny Bills' Motion and ultimately dismiss this action, allowing the state court to rule on Bills' previously-filed, still-pending motion to quash the Subpoena—a sensible approach where its validity hinges on an interpretation of Utah's Rules of Criminal

Procedure and other Utah law. Further, the outcome significantly impacts a preliminary hearing

in a state-based felony prosecution. Though Bills mentions that the preliminary hearing remains

pending (ECF 12 at 21), she does nothing to explain why this Court should circumvent Judge

Trease's determining the Subpoena's validity.

The general rule from *Younger* is that federal courts abstain from ruling on an issue

pending in a parallel state court proceeding, particularly those based on state law, and those in

which the State has an important interest, like enforcing its criminal code. The Court stated that

"[s]ince the beginning of this country's history Congress has, subject to few exceptions,

manifested a desire to permit state courts to try state cases free from interference by federal

courts." 401 U.S. at 43. "Under the *Younger* abstention doctrine, federal courts should not

'interfere with state court proceedings by granting equitable relief—such as injunctions of

important state proceedings or declaratory judgments regarding constitutional issues in those

proceedings—' when a state forum provides an adequate avenue for relief. *Weitzel v. Div. of*

*Occupational & Pro. Licensing of Dep't of Com. of State of Utah*, 240 F.3d 871, 875 (10th Cir.

2001) (citing *Rienhardt v. Kelly,* 164 F.3d 1296, 1302 (10th Cir.1999)).

For *Younger* abstention to apply, three elements must be met:

A federal court must abstain from exercising jurisdiction when: (1) there is an
ongoing state criminal, civil, or administrative proceeding, (2) the state court
provides an adequate forum to hear the claims raised in the federal complaint, and
(3) the state proceedings "involve important state interests, matters which
traditionally look to state law for their resolution or implicate separately
articulated state policies.

*Amanatullah v. Col. Bd. of Med. Examiners*, 187 F.3d 1160, 1163 (10th Cir. 1999) (citations

omitted). The first element is clearly met—there is an ongoing state criminal proceeding, *State v.*

*Bills*, case no. 251900610. (Ex 1.) And nine days after filing this action, Bills filed a reply in that

action supporting her Motion to Quash the Subpoena. (Ex. 6, at 15.)

Second, the state court is an adequate forum to hear Bills' claims. Her Motion to Quash, pending in state court, challenges the practice of having victim/witnesses check-in at the DA Office as a violation of Rule 14 of the Utah Rules of Criminal Procedure, and on Fourth and Fourteenth Amendment grounds. Fourth Amendment issues of search and seizure are routinely addressed by state criminal courts. *See e.g. State v. Tran*, 2024 UT 7, 545 P.3d 248 (addressing motion to suppress evidence obtained in a warrantless entry and search of home under Fourth and Fourteenth Amendments); *State v. Correa*, 2024 UT App 69, 549 P.3d 679 (analyzing application of Fourth Amendment to motion to suppress evidence obtained in an investigatory stop). It is settled that state courts are proper forums to resolve constitutional claims:

> The principle underlying Younger and Samuels is that state courts are fully competent to adjudicate constitutional claims, and therefore a federal court should, in all but the most exceptional circumstances, refuse to interfere with an ongoing state criminal proceeding.

*Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930, 95 S. Ct. 2561, 2567, 45 L. Ed. 2d 648 (1975).

That the criminal case does not involve a claim for damages under 42 U.S.C. § 1983, *et seq.*, is not determinative. In *Sweeten v. Sneddon*, 463 F.2d 713 (10th Cir. 1972), the Tenth Circuit considered whether a criminal proceeding provided adequate remedy at law for an alleged denial of Sixth Amendment right to counsel in a misdemeanor criminal proceeding. In reversing the federal district court that issued an injunction stopping the criminal proceeding, the court of appeals held the "appellee has an adequate remedy at law in the state trial of this case, an appeal to the state supreme court, and the right to petition the Supreme Court of the United States for review of any federal question." *Id*. (citing *Tyler v. Russel*, 10 Cir., 410 F.2d 490, 492). Here, in the event the trial court rules against her on the Motion to Quash the subpoena, Bills has those same avenues available. If the state court denies the Motion, it will necessarily have found the check-in process was not a subpoena to testify at the DA Office, but a subpoena to appear and

14

testify in court with a check-in process to facilitate payment of fees, and provide victims and witnesses a safe location to wait to testify away from defendants and their families.

The third *Younger* element is also met. "For the purposes of *Younger*, state criminal proceedings are viewed as a traditional area of state concern." *Winn v. Cook*, 945 F.3d 1253,1258 (10th Cir. 2019) (quotations omitted); *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) (injunction against state law-enforcement activities "seriously impairs the State's interest in enforcing its criminal laws, and implicates the concerns for federalism which lie at the heart of *Younger*"). The importance of allowing state criminal prosecutions to proceed unfettered is not reasonably in doubt as the *Younger* Court described a "*fundamental policy* against federal interference with state criminal prosecutions…." 401 U.S. at 46 (emphasis supplied).

Once the *Younger* elements are met, abstention is mandatory, absent "extraordinary circumstances. *Weitzel*, 240 F.3d at 875. Those are found only where "the prosecution was: "(1) commenced in bad faith or to harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any other such extraordinary circumstance creating a threat of 'irreparable injury' both great and immediate." *Winn v. Cook*, 945 F.3d 1253, 1258–59 (10th Cir. 2019)(citations omitted). None here exist. Bills is not the subject of the prosecution – she is an alleged victim/witness. There is no assertion the prosecution was commenced in bad faith. There is no assertion of an "patently unconstitutional statute." Lastly, as discussed below, there is no "irreparable injury," let alone one both "great and immediate." If having to stand trial following the untimely appointment of counsel is not an "irreparable injury" (*Dolack v. Allenbrand*, 548 F.2d 891, 894–95 (10th Cir. 1977)), or without appointed counsel on a misdemeanor case

(*Sweeten*, 463 F.2d at 714–15 (10th Cir. 1972)), then having to check-in at the DA Office before testifying at a preliminary hearing does not constitute an irreparable injury.[4]

This matter presents a classic case for the application of *Younger* abstention. The issue was initially brought before a state court, in a criminal proceeding, in which Bills continues to pursue her remedy. The state court is well equipped to address whether the subpoena complies with the state's rules of criminal procedure and the Constitution. And, the state has a particular interest in the issue because it will significantly impact the preliminary hearing, and therefore the ultimate outcome of the prosecution. If the subpoena was proper, Bills has no claim. If the state court grants her Motion to Quash, Bills has been afforded the relief available to her under Utah Rule of Criminal Procedure 14. And judicial resources have been preserved, with the risk of inconsistent determinations avoided.

The court may also abstain under the *Colorado River* doctrine. Rooted in considerations of "wise judicial administration," its purpose is to prevent duplicative litigation. 424 U.S. at 818. Abstention is appropriate under it when state and federal proceedings "are sufficiently parallel," meaning "substantially the same parties litigate substantially the same issues." *U.S. v. City of Las Cruces*, 289 F.3d 1170, 1182 (10th Cir. 2002) (citations omitted). The *Colorado River* Court set

---

[4] *See also Davis v. Lansing*, 851 F.2d 72, 73-74, 77 (2d Cir. 1988)(*Younger* prevented issuance of order directing state court to either release defendant or prevent state judge from disallowing defendant's peremptory challenges under *Batson v. Kentucky*, 476 U.S. 79 (1986); rejecting claim he would "suffer irreparable harm if his trial proceeds with an improperly constituted jury" because "burden of defending a criminal prosecution is, of course, insufficient without more to constitute irreparable harm"); *Palmer v. City of Chicago*, 755 F.2d 560, 575–76 (7th Cir. 1985) (*Younger* barred injunction restraining state from continuing practice of withholding exculpatory evidence from defendants facing trial; the constitutional claims could be adequately raised in the ongoing criminal proceedings); *Davis v. Muellar*, 643 F.2d 521, 525 (8th Cir. 1981) (abstaining from determining if state charges against Indian defendant should be dismissed because he was taken into state custody on his reservation without a tribal extradition hearing; requiring defendant to "defend himself in a criminal trial would not justify habeas corpus relief under the 'both great and immediate' irreparable injury test of *Younger*").

forth a nonexclusive list of factors to consider in deciding whether to abstain and allow the parallel state matter to proceed:

> (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction.

*Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994) (citation omitted). These factors favor abstention, particularly the latter two. Bills currently seeks a state court ruling invalidating the Subpoena, just as she does here. The state court assumed jurisdiction over the issue first, when she moved to quash it in April. To avoid piecemeal litigation, and to permit the state court to handle its own criminal case, this Court should abstain from granting injunctive relief.

## III.    BILLS HAS NOT SHOWN AN ENTITLEMENT TO INJUNCTIVE RELIEF

### A.    *Standards for Injunctive Relief*

Injunctive relief, including a TRO, is "an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Bills must establish her right to it is "clear and unequivocal." *Dominion Vid. Satellite, Inc. v.  Echostar Satellite Grp.*, 356 F.3d 1256, 1261 (10th Cir. 2004) (citations omitted). She must show: 1) she is substantially likely to succeed on the merits; 2) she will suffer irreparable harm if the injunction is denied; 3) the threatened harm outweighs that the County will suffer under the injunction; and 4) the injunction is not adverse to the public interest. *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016) (citations omitted).

Moreover, when an injunction will to do more than "merely preserve the parties' relative positions pending trial[,]" it is considered "disfavored" and requires the movant to make a "strong showing" that the likelihood of success and balance of harms factors "tilt in her favor." *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado,* 916 F.3d 792, 797 (10th Cir. 2019) (citations omitted). Disfavored injunctions include those which "mandate[] action (rather

than prohibiting it);" or "change[] the status quo." *Id.* (citations omitted). Bills seeks to alter the status quo by not enforcing a subpoena, and to mandate the County change its practices for subpoenaing trial witnesses. Thus, she must establish all four traditional injunction factors, with a "strong" showing of likelihood of success on the merits and the balance of harms.[5]

### 1.    Bills Has Not Made a Strong Showing that She is Likely to Succeed on the Merits of her § 1983 Claims for Constitutional Breaches

Bills brings her claims pursuant to § 1983,[6] asserting the Subpoena violates: 1) the Fourth Amendment's bar on unreasonable searches and seizures (ECF 1 at 31-35); and 2) the Fourteenth Amendment's substantive due process protections. She alleges Hall and Gill are liable in both individual and official capacities, and that the County is subject to municipal liability pursuant to *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978).[7] But Bills fails to make a strong showing she will succeed on the merits of her claims.

### a.    Standards Governing Bills' § 1983 Claims

To state a § 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). But a municipality like the County "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a

---

[5] Bills incorrectly suggests the Court may apply relaxed scrutiny to consider if she has shown a likelihood of success on the merits. ECF 12, 9-10. Since *Winter*, the Tenth Circuit has rejected that approach as "impermissible." *Diné Citizens Ag. Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1287 (10th Cir. 2016); *see also New Mexico Dep't of Game & Fish v. U.S. Dep't of the Int.*, 854 F.3d 1236, 1246 (10th Cir. 2017) (noting "our recent decisions admonish [that standard] is not available") (citations omitted).

[6] She also asserts 42 U.S.C. § 1988, which permits the recovery of attorney fees in civil rights cases, but does not provide a separate cause of action.

[7] She alleges the *Monell* claim as a third cause of action in the Complaint. ECF 1 at 40-42.

*respondeat superior* theory. *Monell,* 436 U.S. at 691 (italics in original). Rather, a municipality may be liable only if it took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort." *Id*.

Individual § 1983 defendants may raise a defense of qualified immunity, which shields them "unless their conduct was unreasonable in light of clearly established law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411(10th Cir. 2014) (quotations omitted). To be clearly established, the right's "contours" must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotations omitted). Further, there "[o]rdinarily . . . must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161. Unlike most affirmative defenses, the plaintiff bears the ultimate burden "to overcome qualified immunity by showing a violation of clearly established federal law." *Booker,* 745 F.3d at 411.

### b.  Bills Has Not Made a Strong Showing the Subpoena Violates the Fourth Amendment or Substantive Due Process Protections under the Fourteenth Amendment,  Including under any "Clearly Established" Law

Bills' constitutional claims rest on her argument that the Subpoena: 1) breached the Utah Rules of Criminal Procedure, 2) is therefore "*ultra vires*" and thus void *ab initio*, and 3) as an invalid subpoena, compelled her unconstitutional seizure (via threat of contempt for non-appearance) and search (via a security entrance magnetometer and purse x-ray), and violated her substantive due process rights. She claims the Subpoena violated Rule 14, Utah Rules of Criminal Procedure because: 1) it commanded her to initially appear at the DA's Office adjacent to the Matheson Courthouse before her hearing, rather than go directly to court; and 2) was sent to her via U.S. Mail, but without a return of service filed; 3) did not include a notice on how to

object to it, which she asserts is required under Rule 45, Utah Rules of <u>Civil</u> Procedure. ECF 12 at 7-8, 10-11; *see* Utah R. Crim. P. 14, Utah R. Civ. P. 45. She argues the Defendants' actions in issuing the Subpoena were unlawful and unconstitutional, and perhaps criminal "official misconduct" under Utah Code § 76-8-201(2). ECF 12 at 8, n.1.

Before reaching the constitutional issues, Bills' challenge requires the Court to initially determine if the Subpoena 1) violated Rule 14, 2) in ways that rendered it *void ab initio* or *ultra vires*. Where, as discussed above, these issues have been percolating in the state system since Bills was subpoenaed in March, consulted a lawyer, and appeared in April to initiate a state court challenge to the subpoena. The call for denial of her Motion on abstention grounds is clear.

But if the court proceeds, it should find Bills has not made a strong showing that: 1) the Subpoena fails to comply with Utah law in any material way, and that 2) any alleged failures render the subpoena "*ultra vires*" or void, 3) any constitutional breach occurred, 4) for which the violated right was clearly established in Tenth Circuit or Supreme Court case law. On this factor alone, the Court may deny Bills' Motion for TRO.

### i.    Bills Has Not Made a Strong Showing the Subpoena Violates Rule 14 in Any Material Respect

Bills claims the Subpoena breached Rule 14, Utah Rules of Criminal Procedures because: 1) it was delivered to her via U.S. Mail without a return of service filed; 2) did not include the notice of the grounds to object to a civil subpoena; and 3) instructed her to arrive at the DA Office (across the sidewalk from the courthouse) before her hearing, rather than go directly in court. ECF 12 at 7-8, 10-11. Defendants concede for purposes of opposing Bills' Motion no return of service was filed. Notably, however, Bills never asserts a causal connection between the failure of a return of service and any of the harms she claims to have suffered.

Under Rule 14, an attorney may issue a subpoena "to require the attendance of a witness . . . *before a court* . . . in connection with a criminal investigation or prosecution may be issued by . . . the prosecuting attorney on his or her own initiative or upon the direction of the grand jury." UTAH R. CRIM. P. 14(a)(1) (emphasis added). It "may command the person to whom it is directed to appear and testify . . . *in court* . . . ." UTAH R. CRIM. P. 14(a)(2). Service to a non-party over 18 years old must be made by "delivering a copy of the subpoena to the witness . . . personally and notifying the witness of its contents," and a return of service must thereafter be made to the court. UTAH R. CRIM. P. 14(a)(3)-(4). And "the provisions of Rule 45, Utah Rules of Civil Procedure, will govern the content, issuance, objections to, and service of subpoenas to the extent those provisions are consistent with the Utah Rules of Criminal Procedure." UTAH R. CRIM. P. 14(c).  Finally, "[t]he court may quash or modify the subpoena if compliance would be unreasonable." UTAH R. CRIM. P. 14(a)(2).

First, Bills has not made a strong showing that the DA was required to include with the criminal subpoena a notice providing the grounds on which to object to it, as is required under Utah Rule of Civil Procedure 45 for subpoenas in civil cases. Bills cites no authority to support her assertion that the notice is required. Under Rule 14, rules of civil procedure govern "to the extent" they are "consistent with the Utah Rules of Criminal Procedure." UTAH R. CRIM. P. 14(c). Bills offers no analysis to establish this consistency, including that a criminal witness may actually assert all same grounds to object to a subpoena as a civil witness. On this point (for which she bears the burden) she simply states: "The governing analogous civil rule mandates in relevant part not inconsistent with Rule 14, that a subpoena must 'include a notice to persons served with a subpoena in a form substantially similar to the approved subpoena form, . . . " ECF

12 at 12. But simply saying the notice would not be "inconsistent with Rule 14," the Rule that simply permits the notice only if consistent with the *other* Rules, does no work at all.

Moreover, the notice form used in civil cases bears little resemblance to the procedure outlined in Rule 14. Rule 14(2) provides, "[t]he court may quash or modify the subpoena if compliance would be unreasonable." UTAH R. CRIM. P. 14(a)(2). The civil notice form provides a litany of potential objections relating to protected matters, trade secrets, and commercial information. Civil Rule 45 anticipates an objection being filed by the subpoenaed party with a subsequent motion to compel being filed to force the issue to resolution. UTAH R. CIV. P. 45(e). These procedures are entirely inconsistent with a motion to quash under Rule 14. Consequently, Bills has not made and cannot made a strong showing that the lack of the civil notice form on a criminal subpoena is even a violation of Rule 14.

Second, Bills has not made a strong showing the Subpoena, when read reasonably and as a whole,[8] violates Rule 14 simply because the address witnesses are directed to go to thirty minutes before the scheduled court hearing is the DA Office, across the sidewalk from the Matheson Courthouse west entrance. Rule 14 permits a DA to subpoena the "attendance of a witness . . . *before a court* . . ." and command the person to whom it is directed to appear and testify . . . *in court* . . . ." UTAH R. CRIM. P. 14(a)(1- (2). Contrary to Bills' assertion, the

---

[8] Utah courts interpret "judicial documents the same way they interpret contract language." *Iota LLC v. Davco Mgmt. Co. LC*, 2016 UT App 231, ¶ 33 (citing *Williams v. Miller*, 794 P.2d 23, 26 (Utah Ct. App. 1990). "An order is ambiguous if it is subject to two plausible constructions." *Progressive Acquisition, Inc. v. Lytle*, 806 P.2d 239, 243 (Utah Ct. App. 1991). But language is not "ambiguous simply because one party seeks to endow [it] with a different interpretation according to his or her own interests." *Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 17. "To be ambiguous, both interpretations must be plausible in the context of the [order] as a whole." *Merrick Young Inc. v. Wal–Mart Real Estate Bus. Trust*, 2011 UT App 164, ¶ 18. Thus, this Court "may look both at the language [of the orders] 'as a whole and to [their] circumstances, nature, and purpose . . . ' to determine [their] meaning. *Iota*, 2016 UT App 231, ¶ 33 (quoting *Peirce v. Peirce*, 2000 UT 7, ¶ 19, 994 P.2d 193). "The cardinal rule of interpretation is to give effect to the parties' intentions." *Williams*, 794 P.2d at 26 (citations omitted)

subpoenas are subpoenas to appear in court. They are not "investigative subpoenas." Bills'

Subpoena includes a case caption with the case name, presiding judge, and assigned numbers for

the court, DA, and incident. Below the caption, it provides:

**YOU ARE COMMANDED to appear and give testimony in the above-entitled action before the court as a witness in a criminal action against the above-named defendant(s). DISOBEDIENCE MAY BE PUNISHED AS A CONTEMPT OF SAID COURT:**

**PLACE: 35 East 500 South, Salt Lake City, Utah 84111**
**HEARING: Preliminary Hearing (Court Event)**
**ATTORNEY: SCOTTIE BOWDEN**
**APPEARANCE DATE(S): 04/14/2025 01:30 PM (please arrive no later than 01:00 PM)**

The Subpoena makes clear that Bills is being directed to "give testimony . . . *before the court* as

a witness," at a "Preliminary Hearing," which is a "Court Event." It provides notice that her

hearing is at 1:30, but she should show up at 1:00. No one sought to meet with or question Bills

in any way before the scheduled hearing. She simply waited for the noticed thirty minutes before

staff shuttled the witnesses across the sidewalk to go to the scheduled hearings. There is no term

in Rule 14 barring a witness's initial check-in and briefly waiting—along with other witnesses—

in a large room in a government building across the sidewalk from the courthouse.

Further, having witnesses assemble at the DA Office comports with statutorily-required

duties under Utah's crime victim law and facilitates orderly appearances and payment of witness

fees for thousands of witnesses who must testify *in court*. First, Utah Code § 77-37-1, et seq.,

*Victims Rights Act*, includes a crime victims *Bill of Rights* at § 77-37-3. The Utah Supreme Court

has explained that because this law applies to "all criminal justice agencies," and "prosecutors

are a component of the criminal justice system," duties in the *Bill of Rights* "necessarily fall upon

prosecutors." *State v. Casey*, 2002 UT 29, ¶ 29 (citing § 77-37-7(3)(a)(b)-(c)). One right that

prosecutors must facilitate is that "[v]ictims and witnesses should have a secure waiting area that

does not require them to be in close proximity to defendants or the family and friends of

defendants. Agencies controlling facilities shall, whenever possible, provide this area." Utah Code § 77-37-3(d). The DA's duty is met by having witnesses, including victim-witnesses like Bills, arrive and briefly wait for court hearings in a large room in a government building immediately across from the court, away from defendants. There is no analogous witness waiting room in the Matheson Courthouse. The current procedures mitigate, if not eliminate, the risk of violating this important right for witnesses, including those who are crime victims.

Moreover, the procedures for having government witnesses check-in and briefly wait at the DA Office before testifying in court facilitates orderly hearings/payments. In the Third District Court, judges have assigned days for the criminal docket. On those days, a variety of matters in a large number of cases are set to be heard at the same time in the same courtroom. Because the Matheson Courthouse does not have a witness assembly room, and because preliminary hearing calendars, jury trial settings, and other evidentiary hearing dockets can involve many victims and witnesses, the Check-in/Payment Process at the DA's Office allows for a more orderly connection between prosecutors and witnesses. (Ex. 3 ¶¶ 10-12.) By and large, this system has proven successful at getting victims and witnesses to court without confusion as the location of and reasons for their testimony. Without this process, days on which victims and witnesses have to appear in court would be chaotic. Prosecutors would be calling out names in the courtroom to locate victims and witnesses, and more frequently stepping into the hallway to see if witnesses had arrived, with judges inevitably left waiting with a full courtroom and a long docket. (*Id.*) Contrary to Bills' assertion, this process serves the underlying goals of Rule 14; it gets witnesses to court to testify.

Also contrary to the theme of Bills' claims, the DA's subpoena process has been coordinated with the AOC– particularly relative to facilitating the payment of witness fees. As

set forth in greater detail in Lisa Ashman's Declaration, the subpoenas have a bar code, which is scanned at the DA's Office when a witness checks in, which is utilized to generate a list provided to the AOC so it knows to whom to issue witness fee checks. (Ex. 2.) Bills has not made a strong showing that the Subpoena process violates Rule 14.

But even if Bills had shown the Subpoena breached Rule 14, this might trigger, but does not answer, the question of whether she has made a strong showing that the breaches render the Subpoena "*ultra vires* and *void ab initio*" (ECF 12 at 14), or support a constitutional claim under clearly established law. As discussed below, she has not.

### ii. Bills Fails to Make a Strong Showing the Subpoena is Void

Bills claims throughout her Motion that the lack of a return of service and the other alleged breaches of Rule 14 rendered the Subpoena "*ultra vires*" and void *ab initio.* She fails both factually and legally to make a strong showing on this point. As noted above, the only breach she can strongly show is a failure to file a return of service—a failure that appears to disadvantage the DA, leaving him less equipped to ascertain and argue that a witness's failure to appear to testify was done knowingly.

This may explain why her argument on this point largely pivots from the above-discussed alleged Rule 14 breaches to the suggestion of a false factual premise—that the Subpoena improperly sought to facilitate the *DA conducting an interview or eliciting testimony from her* outside of a court hearing. Bills explains at some length the procedures a prosecutor must employ to "obtain testimony outside of court" before arguing "Defendants have flagrantly bypassed all of these legal safeguards." ECF 12 at 14. The procedures she identifies for "obtain[ing] testimony outside of court" include those for a deposition under Utah Rule of Criminal Procedure 14(8) (*see* ECF 12 at 12-13), handling and possibly detaining a hostile witness pursuant to Rule 7(c)

(*Id.* at 13), or for conducting investigative interviews/examinations pursuant to Utah Code § 77-22-2 (*Id.* at 13-14). Yet, in reality, no one tried to meet with, interview, question, or obtain any testimony or evidence from Bills while she waited for her court hearing. This renders wholly immaterial the arguments Bills makes on this point. That she argues "Defendants' exact purpose(s) are unknown," and could have included an intent to elicit out of court testimony is difficult to understand. ECF 12 at 17. No Defendant sought or obtained an "ex parte meeting[]" with Bills (*Id.* at 15) or sought or obtained "testimony outside of court" from her during the time in question. She was expressly subpoenaed to testify "before the court" in a hearing, and simply assembled with other witnesses to wait for her time to testify in court.

In addition to a lacking factual foundation, Bills fails further to make any showing that the law supports the *ultra vires*/void *ab initio* proposition. The lone legal authority she cites on this point is an unhelpful passing comment made in a concurrence by now-Justice Gorsuch in *U.S. v. Krueger*, 809 F.3d 1109, 1123-24 (10th Cir. 2015). *Krueger* concerned an appeal from the grant of a motion to suppress evidence obtained pursuant to a Kansas-issued search warrant that was executed in Oklahoma. A warrant, issued by a magistrate judge in Kansas, was used to seize and search property in Oklahoma, a clear violation of Rule 41(b)(1), Federal Rules of Criminal Procedure. On appeal, the government conceded the Rule violation, and did not contest the district court's finding that the warrant was "so facially deficient that the good-faith exception should not apply." *Id.* at 1113. Without determining whether the clear Rule violation rose to a level of constitutional concern (*id.* at 1114-15), the court of appeals found the suppression of evidence obtained pursuant to the warrant appropriate where the movant showed clear prejudice from the obvious Rule violation. *Id.*

It is unclear how Bills thinks Gorsuch's comment in his concurrence supports a conclusion that the Rules violation identified render the subpoena was void *áb initio*—she offers no analysis. Defendants simply offer that the case is so clearly factually and legally distinct—the violation in *Krueger* so blatant and material, and in the wholly different legal context of a search warrant—as to be inapplicable. As discussed below, the Tenth Circuit expressly distinguishes between subpoenas and warrants in the Fourth Amendment context, because submission to a warrant is immediate and intrusive, where a subpoena typically grants the target time to object—as happened here.

### iii.  Bills has Not Made a Strong Showing that any Alleged Infirmities in the Subpoena Violate the Fourth Amendment under Clearly Established Law

The Fourth Amendment protects against "unreasonable" searches and seizures. U.S. Cont. amend. IV. Bills claims this was breached when Defendants "seized her person for approximately 100 minutes (in the DA's Office, en route to the courthouse, and inside the courthouse combined) with no legal cause whatsoever[,]" searched her via a magnetometer and purse x-ray, and "detained" her under threat of contempt. ECF 12 at 16-17. As noted above, Bills fails to show the Subpoena breached Rule 14, except the lack of return of service. She also fails to show why this breach leads to the conclusion that the subpoena is "*void ab initio*." And she further fails to show how the alleged breaches support a Fourth Amendment claim.

As an initial matter, the Supreme Court holds a subpoena to testify—at least before a grand jury—"is not a 'seizure' in the Fourth Amendment sense, even though that summons may be inconvenient or burdensome." *U.S. v. Dioniso*, 410 U.S. 1, 9 (1973). Indeed, it is foundational to our envied criminal jury trial system that subpoenaed witnesses attend trial to offer evidence and testify, such that the Supreme Court has explained that "[t]he personal sacrifice involved is a

part of the necessary contribution of the individual to the welfare of the public." *Blair v. U.S.*, 250 U.S. 273, 281 (1919). If "[t]he duty . . . [may be] onerous at times," it is "necessary to the administration of justice according to the forms and modes established in our system of government . . . ." *Id.; see also* Utah Code § 78B-1-130 (witnesses served with a subpoena must "(1) attend at the time appointed . . .; (2) answer all pertinent and legal questions; and (3) unless sooner discharged, remain until the testimony is closed."). Thus, even a subpoena that requires some sacrifice or is even "onerous"—including because it may require the loss of an hour and a half—is ordinarily not a Fourth Amendment seizure at all.

The Tenth Circuit appears to concur, citing its agreement with courts declining "to expand Fourth Amendment liability in cases where the plaintiff has not been arrested or incarcerated." *Becker v. Kroll*, 494 F.3d 904, 915 (citing numerous cases where in the courts "declined to recognize typical pre-trial release conditions, such as receiving a summons, . . . and appearing in court, as a seizure."). Rather, the "Fourth Amendment requires only that a subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *Id.* at 916 (citations omitted). While *Becker* involved a subpoena for documents, the rationale for limiting Fourth Amendment liability applies to both document and testimony subpoenas—because, in contrast to warrants that are "'immedia[te] and intrusive,'" subpoenaed parties can challenge the subpoena before complying with it. *Id.* (quoting *In re Subpoena Duces Tecum*, 228 F.3d 341, 347-49 (4th Cir. 2000)).

And Bills did just that. In the month between her subpoena and the hearing where she was to testify, she consulted a lawyer and formed a plan about how to challenge the subpoena, deciding to go to the DA Office as instructed, then orally move to quash.

Second, to the extent Bills claims that the magnetometer scan and purse x-ray amounted to unreasonable searches, this fails. Bills seems to be saying that because Subpoena wrongly instructed her to go to the DA's Office before her court hearing, she was subject to these (essentially identical) searches twice, rather than just once at courthouse as would be required if the subpoena instructed her to go straight to the courtroom (as she argues it should have).

Recall that Bills in fact only went through these screening methods at the DA's Office and avoided the witness/public entrance at the Matheson Courthouse because she is a court employee. But had she gone through two searches, they would have been identical.

Under well-settled law, these minimally invasive, blanket searches are plainly reasonable at both buildings given the business conducted—far from amounting to a Fourth Amendment violation. The Supreme Court has long held that "where the risk to public safety is substantial and real, blanket suspicionless searches calibrated to the risk may rank as 'reasonable'—for example, searches now routine at airports and at entrances to courts and other official buildings." *Chandler v. Miller*, 520 U.S. 305, 323 (1997) (citations omitted). Such a search is a minimal invasion of privacy, as the Second Circuit Court of Appeals has explained:

> There is no detention at all; there is no 'probing into an individual's private life and thoughts . . ..' The passing through a magnetometer has none of the indignities involved in fingerprinting, paring of a person's fingernails, or a frisk. [It] does not annoy, frighten or humiliate those who pass through it. Not even the activation of the alarm is cause for concern, because such a large number of persons may activate it in so many ways. No stigma or suspicion is cast on one merely through the possession of some small metallic object. Nor is a magnetometer search done surreptitiously, without the knowledge of the person searched. Signs warn passengers of it, and the machine is obvious to the eye.

*United States v. Albarado*, 495 F.2d 799, 806 (2d Cir. 1974) (quotations and citations omitted). Thus, while perhaps inconvenient, that Bills might have, theoretically, had to undergo two of

these permissible scans—had she not actually entered the courthouse through an employee entrance—does not support a claim for a constitutional breach.

And while Bills claims the Subpoena violates Rule 14, including for a lack a return of service, she has not made a strong showing that *any* Rule violation supports a constitutional claim. The Tenth Circuit explained that it "is well established. . . that a state's violation of its own laws does not create a claim under § 1983." *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 947 (10th Cir. 2003). For any alleged Rule violation, Bills "only has a cause of action under § 1983 if the State's actions 'fail to meet basic federal constitutional standards[.]" *Becker*, 494 F.3d at 917 She must therefore show that the lack of a return of service, failure to include a notice on the grounds for objecting to a *civil* subpoena, and/or the witness check-in location in the DA Office fail a constitutional standard. She has not made a strong showing on any count.

First, *Becker* appears to foreclose the argument that the procedural violations she alleges amount to a constitutional violation. The *Becker* plaintiff was a doctor who was investigated and charged for by Utah's Medicaid Fraud Control United (MFCU) for "upcoding" and overbilling. MCFU subpoenaed medical records in her possession, interviewed her, sued her civilly then withdrew the suit, charged her criminally before withdrawing those charges, then libeled her in a report on a state website before removing the report. *Id.* at 911-912. She sued for constitutional violations, including under the Fourth Amendment for seizing records pursuant to an administrative subpoena in violation of "a number of state law provisions," including 1) the subpoena was "served by an interested party" (MCFU investigators, including the chief), 2) failure "to file a statutorily required return of service," and 3) failure to notify her that the "records in the court file were sealed." *Id.* at 917. The court held that "none of the state

procedural requirements involving subpoenas rise to [the] level" of a failure to meet basic constitutional standards "under the Fourth Amendment." *Id.* (citations omitted).

Moreover, the check-in location and procedures at the DA Office is also just plainly reasonable. The Office's location poses no notable burden to witnesses in addition to any normally experienced by any subpoena. It is adjacent to the courthouse, southwest of the court's entrance, across a sidewalk. The Office offers free parking to witnesses (along with information on other parking options), and a comfortable, large room where victim-witnesses can safely and legally wait to testify away from defendants and their families. With the bar scan system the DA worked to create with the AOC, prosecutors are informed when witnesses arrive, and witness fee payment is facilitated. Moreover, the arrival time of thirty minutes before a hearing helps prevent delays for judges and others on busy criminal calendar days.

Thus, Bills fails to make a strong showing of a Fourth Amendment violation. Without one, she cannot establish a § 1983 claim against any Defendant, including the County via her *Monell* claim. *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1191 (10th Cir. 2020) (noting "[b]ecause municipalities act through officers, ordinarily there will be a municipal violation only where an individual officer commits a constitutional violation.").

But even if Bills could make a strong showing that the Subpoena violated the Fourth Amendment, she cannot establish any purported violation was clearly established via a Tenth Circuit or Supreme Court case. In support of her claim, she cites a litany of cases involving the use of trial subpoenas to obtain testimony or evidence other than in the setting permitted under the law, such as an out of court interview. ECF 12 at 18, n. 4. That didn't happen in this case.

In the lone Tenth Circuit case she cites in footnote 4, *United States v. Villa-Chaparro*,[9] the court of appeals affirmed the denial of a motion to dismiss an indictment where the defendant argued the government had a practice of using Rule 17, Federal Rules of Criminal Procedure, to "compel witnesses to attend ex parte interviews," and had done so with two witnesses in the case against him. 115 F.3d 797, 804 (10th Cir. 1997). Though that practice was improper, the court of appeals declined to reverse where the defendant failed to show any prejudice to him from the interviews. *Id.* This case does not clearly establish that the Subpoena violated a constitutional right. The case is materially distinct on its facts—involving a different Rule, and witnesses improperly subjected to ex parte interviews benefitting the prosecutor. Moreover, it does not hold that any constitutional right was violated by the improper interviews.

Bills also cites *Terry v. Ohio*, 392 U.S. 1 (1968), in which the Court held officers may conduct stop and frisk searches upon reasonable suspicion of criminal activity, and *U.S. v. Arango*, 912 F.2d 441 (10th Cir. 1990). Neither case involves Fourth Amendment violations involving a subpoena of any kind—nor facts that are closely analogous. They do not provide the requisite clearly established law.

---

[9] In one case Bills cites from the Seventh Circuit, the court suggested that Federal Rule of Criminal Procedure 17—once again, an entirely different rule than Utah's Rule 14—used to compel attendance of a witness at trial to a place other than where trial, did not allow the government to issue subpoenas to "compel witnesses, many of them employees of defendants, to come, not to the courtroom, but to the United States Attorney's office at hours when the court was not in session," where the witness were then "interrogated by government counsel," and had requested to have counsel present, which were denied. *U.S. v. Standard Oil Co.*, 316 F.2d 884, 897 (7th Cir. 1963). In the context of these facts, the court noted Rule 17 "does not authorize the government or the defense to subpoena a witness and require him to report at some place other than where the trial is to be held," but "that there may be no impropriety for counsel on either side to interview a witness if done fairly and without attempting duress in any form." *United States v. Standard Oil Co.,* 316 F.2d 884, 897 (7th Cir. 1963). The court rejected the defendants' argument that their convictions should be reversed based on the refusal to allow counsel at the interview, where "it was the witness and not a defendant who was deprived of that privilege." *Id.*

The Court is no doubt familiar with *Terry,* and there is no need to further elaborate on its

unhelpfulness. *Arango* is similarly inapplicable. There, the defendant was stopped for speeding.

The truck he drove was registered to other persons. The defendant said they lent the truck to him,

but didn't have a phone number. *Id.* at 443. Police conducted a consent search of the truck,

finding it appeared to be freshly painted and modified in notable ways, including a possible

"false bed." *Id.* Retaining the license and registration, the police told the defendant to follow

them to the sheriff's office to post bail for the citation. There, he was pressured to sign a written

consent form. The officers then found cocaine in the truck. *Id.* at 444. He later moved to suppress

the evidence against him. The trial court denied the motion, and the court of appeals affirmed.

In notable part, the Tenth Circuit found under all the facts, there had been no illegal

detention at any stage, including the roadside stop and the arrest that occurred when police

retained his documents and instructed him to come to the sheriff's office. The latter was proper

based on sufficient probable cause of contraband. *Id.* at 445.

These cases do not provide Bills with clearly established law suggesting her rights were

violated by the alleged infirmities in the Subpoena. Thus, she has not made a strong showing that

can succeed on the claim against Defendants.

### iv.  Bills Has Not Made a Strong Showing the Subpoenas Violate the Fourteenth Amendment's Substantive Due Process Protections, Including under any "Clearly Established" Law

Bills further alleges that that the Subpoena violated her substantive due process rights.

ECF 12 at 19-21. These "arise[] from the Fourteenth Amendment's protections against

governmental deprivations 'without due process of law.'" *Williams v. Berney*, 519 F.3d 1216,

1220 (10th Cir. 2008) (quoting U.S. Const. amend. XIV, § 1). Generally, "due process

protections are accorded primarily 'to matters relating to marriage, family, procreation, and the

right to bodily integrity.'" *Id.* (quoting *Albright v. Oliver*, 510 U.S. 266, 272 (1994)). In extending these protections to other areas, "the Supreme Court has emphasized 'that only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quotations omitted)). These claims find support only in a "level of executive abuse of power that . . . shocks the conscience." *Id.* at 846.

As Bills seems to acknowledge, her claims arise (if at all) under the Fourth Amendment. ECF 12 at 20. Thus, she cannot make a strong showing of a substantive due process claim under the Fourteenth Amendment. *See Becker*, 494 F.3d at 918-19 (dismissing substantive due process claim where it was based on pre-trial seizures or deprivations of liberty, which implicate the Fourth Amendment).

Moreover, Bills has not pointed to conduct so egregious as to be conscience-shocking. Bills claims the Defendants' conduct meets this standard because they have "trick[ed] thousands" into surrendering their "privacy and liberty rights with no legal justification." ECF 12 at 20. The discussion above concerning the Fourth Amendment, and Bills' own allegations belie this sweeping accusation. She was subpoenaed to testify for the government a month before a scheduled hearing. The location where she was to go was clear, as was the fact she would testify in court at a preliminary hearing. After consulting with an attorney, she decided to undergo (some of) the allegedly problematic procedures she now targets—checking in and waiting for her time to testify *in court* in a government building adjacent to the courthouse, and undergoing minimally invasive magnetometer and x-ray bag scan (which she skirted at the courthouse). She is currently challenging the Subpoena in state court, as the law allows her to do prior to compliance. She has yet to testify in the hearing the subpoena addressed.

These facts don't come close to those in the "thought experiment" Bills' asks to the court to do, comparing them to a situation where "a private criminal defense attorney" subpoenaed a "victim-witness to appear under threat of contempt for an ex parte meeting at the attorney's home-office ahead of a court hearing." ECF 12 at 20. But it may be revealing of the weakness in Bills' argument that this is how far her hypothetical must stretch things. Moreover, even in this "thought experiment," the witness would have the opportunity to challenge the subpoena—just as Bills did. In reality, no one subpoenaed Bills for an ex parte interview. She was subpoenaed to testify only in court, but to arrive at a government building next to the courthouse, where she waited a short time with other witnesses, and no one asked her a single question.

As with the Fourth Amendment claim, Bills has not made a strong showing of a violation of her substantive due process rights under the Fourteenth Amendment by the individual Defendants, she cannot establish a *Monell* claim against the County.

Further, she has not provided in her Motion any citation to clearly established law suggesting that in an analogous situation, the Tenth Circuit or Supreme Court (or any court) has found a substantive due process violation.[10] And *Becker* suggests she will be unable to do that.

### 2.    Bills Has Not Established She Will Suffer Irreparable Harm Without a TRO

The Tenth Circuit has explained that among the requirements for preliminary injunctive relief, a showing of irreparable harm is the "the single most important prerequisite[.]" *First Western Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (cleaned up). Bills argues she will suffer irreparable harm without a TRO, because she "remains subject to ongoing exposure to the DA Subpoena scheme," which is constitutionally infirm. ECF 12 at 87-88. A

---

[10] Bills cites numerous cases at footnote 5 in her Motion (ECF 12) concerning marriage and child-rearing, intimate relations, reproductive rights, and bodily integrity. None are factually on-point with her case.

constitutional injury may be irreparable harm. *Free the Nipple*, 916 F.3d at 806 (10th Cir. 2019)(citations omitted). But Bills fails to make this showing for multiple reasons.

First, as discussed above, she has not shown a likelihood of success on the merits of her claim of constitutional breaches. Where those breaches are her claimed harm, she has not met this element. *See Rocky Mountain Gun Owners v. Polis*, 701 F.Supp.3d 1121, 1147 (D.Colo. 2023)(finding where plaintiffs failed to show likelihood of success on Second Amendment claim, they in turn had not shown irreparable harm in the absence of an injunction).

Second, Bills' claim of irreparable harm is entirely speculative (and underscores why this case was imprudently filed). Bills has a fully-briefed motion to quash the subpoena at issue pending before the state court, with a June 23 court hearing scheduled. If this Court denies her TRO, or simply delays ruling, absolutely nothing will happen to Bills with regard to the subpoena until at least that time, when a competent state court judge reviews her argument. It is unknown whether the subpoena will be enforced or not, and on what grounds. Bills' claim of an emergency need for this court's intervention not only rings hollow, it wastes judicial resources.

Moreover, Bills' claim of need for an emergency TRO is belied by her delay in seeking it. She was subpoenaed in March. After consulting with her counsel, she decided to wait until April 14—the day of the preliminary hearing—to move to quash it. She then took three more weeks to file this action, seeking ex parte relief,  on May 5. Later, when a hearing was set on the Motion to Quash on June 2, she requested it be delayed, and it is now set for June 23. Bills' own actions contradict her claimed need for immediate action. *See Schiermeyer on Behalf of Blockchain Game Partners, Inc. v. Thurston*, 697 F.Supp.3d 1265, 1270 (D.Utah 2023) (noting injunctions are "generally granted under the theory that there is an urgent need for speedy action

to protect the plaintiffs' rights[;]" thus, a "[d]elay in seeking enforcement of those rights [ ] tends to indicate at least a reduced need for such drastic, speedy action.")(quotations omitted).

### a. Bills Has Not Made a Strong Showing that the Balance of Harms is in Her Favor or that an Injunction Would Serve the Public Interest

At the third and fourth elements, Bills must make a strong showing that the irreparable harm she will suffer outweighs the harm to the Defendants a TRO would cause the Defendants, and that the injunction would not be against the public interest. *Free the Nipple*, 916 F.3d at 806-7 (citations omitted). As discussed, Bills identifies no constitutional violation, but even if she had, any claim she will suffer if the Court does nothing is entirely speculative.[11] She has thus established no harm to strongly tip the rationale for an injunction in her favor.

In contrast, imposing the requested injunction would harm both the DA Office and County, and in turn, is not the public interest. The DA Office prosecutes thousands of cases every year.  The practice of listing the office address on its subpoenas is done in an effort to ensure victim and witness safety and compliance with the *Victim's Bill of Rights*, streamline the appearance of a large number of witnesses at a time, ensure court hearings move efficiently for all, and facilitate thousands of witness fee payments. Further, if the state court were to determine in the pending criminal matter that this practice was improper, it is in the best position to provide a remedy to Bills and her alleged class members.

---

[11] Here, Bills argues the Subpoena threatens "unlawful detention" for the purpose of seeking out-of-court testimony from witnesses. ECF 12 at 23. That is incorrect. She was not detained, she was subpoenaed. No one, including any prosecutor, asked for or insisted that she testify outside of the court hearing. Indeed, she did not speak to a prosecutor. When *Bills* asked a DA staff member where she "was supposed to meet her assigned prosecutor," they responded "Not here. He's not coming here." ECF 12 at 7.

## **CONCLUSION**

Bills has not shown a clear entitlement to the extraordinary relief she seeks. At the outset, she fails to address the plain abstention issue, despite having moved to quash in a state court criminal case the very subpoena she challenges in this "emergency" action. Moreover, she has not shown an entitlement to injunctive relief under Rule 65 on any required element, including strong showing on the likelihood of success on the merits and the balance of harms. This Court should deny her Motion and allow the state court to address the validity of the subpoena.

DATED 19th day of May 2025.

OFFICE OF THE SALT LAKE COUNTY
DISTRICT ATTORNEY

*/s/ William G. Garbina*
Deputy District Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of May 2025, a true and correct copy of the foregoing Defendants' Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction was electronically filed with the clerk of the court utilizing the CM/ECF system, which sent notifications to all counsel of record.

<div align="center" style="text-align:right">

*/s/ Iris Pittman*

Paralegal

</div>